### STATE OF CONNECTICUT *v.* MENACES TORRES
### (8707)

O'CONNELL, FOTI and LAVERY, Js.

"A. Yes.

"A. Yes."

Argued December 13, 1990—decision released March 26, 1991

*Suzanne Zitser,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*James A. Killen,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Kevin McMahon,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the crimes of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2) and (4), and assault in the first

degree in violation of General Statutes § 53a-59 (a) (1).[1] The defendant claims that the trial court improperly (1) instructed the jury on an uncharged portion of the robbery statute, (2) failed to grant his motions for acquittal and for a new trial as to the count of robbery in the first degree because there was insufficient evidence to support his conviction, and (3) failed to strike the testimony of a witness.[2] We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On November 20, 1988, the victim, Orlando Vega, and Hector Gonzalez helped their friend, Manny Vega, move from West Hartford to Hartford. They finished moving at approximately 10 p.m., and went to a bar. They each had one drink before proceeding to the Friendship Cafe between 10:30 and 11 p.m. After having several drinks, Manny Vega and Orlando Vega left the Friendship Cafe to get a pizza, and Gonzalez remained at the bar to play pool. When Manny Vega and Orlando Vega returned to the Friendship Cafe to pick up Gonzalez, it was closing and they were not allowed to enter. They knocked on the window and eventually Gonzalez left the bar. Reunited, the three men started toward Orlando Vega's truck when they encountered a group of people who began shouting obscenities at them. At that point, the defendant left the group and charged at Gonzalez, attempting to strike him. The defendant's blow went astray, and Gonzalez knocked him to the ground. While the defendant was on the ground, he pulled out a gun, aimed it at Gonza-

[1] The defendant was acquitted of a third count of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2) and (4).

[2] The defendant amended his original appeal to include the trial court's judgment of conviction of failure to appear in the first degree. General Statutes § 53a-172 (a). The defendant, however, has abandoned this claim in his brief.

lez, and squeezed the trigger several times. The .45 caliber automatic pistol did not discharge because it did not contain an ammunition clip. A woman who was standing nearby tossed a clip to the defendant, who loaded the gun. Although Gonzalez fled, the defendant began shooting at him; nevertheless, Gonzalez escaped without being hit.

After Gonzalez escaped, the defendant hit Orlando Vega across the jaw with the gun knocking him to the ground. Manny Vega attempted to help his friend, but was stopped by another member of the group who was holding a shotgun. The defendant then began kicking Orlando Vega in the face with metal tipped boots and went through his pockets. The defendant told the man holding the shotgun to keep Manny Vega there so that he could do the same to him, but the man with the shotgun told Manny Vega to run. As Manny Vega ran away, the defendant fired several shots at him.

Orlando Vega was taken from the scene of the attack to a hospital. His injuries seriously threatened his life, and he remained comatose for nearly one month. He suffered multiple lacerations, a fractured jaw, and a traumatic brain injury. He required a tracheostomy, stitches for lacerations on his mouth and ears, and surgery on his jaw, which was also wired shut. His head injury has left lasting residual effects. Orlando Vega was forced to undergo extensive rehabilitation that included relearning how to walk and how to write. Despite this rehabilitation, he still requires the use of a cane, and continues to suffer from impaired vision, slurred speech and memory loss.

The defendant's first claim is that the trial court improperly instructed the jury on an uncharged portion of the robbery statute. The following facts are relevant to this issue. The state, in response to the defendant's motion, filed a bill of particulars that was

incorporated into a substitute information. In the first count, the state charged the defendant with robbery in the first degree under both subdivisions (a) (2) and (4) of General Statutes § 53a-134.[3] The state alleged that "while armed with a deadly weapon (handgun) [the defendant] did take the property of Orlando Vega and discharged shots to accomplish the larceny" in violation of subdivision (a) (2), and that "while he was committing a larceny of the property of Orlando Vega [the defendant] displayed or threatened the use of what he represented by his words or conduct to be a pistol or revolver" in violation of subdivision (a) (4).

When the trial court instructed the jury on the first count, it addressed the paragraph charging the defendant under subdivision (a) (2) of the robbery statute first. The court explained the statutory elements of this subdivision and informed the jury that robbery requires a larceny with the use of physical force. In referring to the evidence of physical force, the court mentioned the evidence supporting the state's allegations that the defendant struck Orlando Vega with the gun, and that he subsequently beat and kicked him. Additionally, the court instructed the jury that to convict the defendant under subdivision (a) (2), it must find not only a larceny with physical force, but also that the defendant was armed with a deadly weapon, specifically, a gun from which a shot may be discharged. The court referred to evidence of the defendant's alleged firing of the weapon, and his alleged attempts to discharge the gun before it was loaded.

The court then proceeded to instruct the jury on the second paragraph of the first count in which the defend-

[3] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime . . . he . . . (2) is armed with a deadly weapon; or . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver . . . or other firearm . . . ."

ant was charged under subdivision (a) (4) of § 53a-134. The defendant took no exceptions to these portions of the charge on the elements of robbery or to the court's reference to the evidence supporting the charge.

During deliberations, the jurors sent three notes to the court regarding the first count of robbery. The first note asked for a review of the elements of the first count. The court complied and no exceptions were noted. The second note asked the court to restate the elements of the first count and to explain further the significance of the discharging of the weapon.[4] The court reinstructed on the statutory elements of robbery in the first degree under both subdivisions (a) (2) and (4). The court also instructed the jury that the gun did not have to be fired at all and that the evidence of firing "only proves that it either fits into the [definition of] firearm or deadly weapon." Again no exceptions were taken. The jury delivered a third note to the court that read: "First count, do the elements of the charge have to agree with the bill of particulars in the first count? In order to satisfy element two, deadly weapon, it does not have to [be] discharged to satisfy the element? However, the bill of particulars states that the defendant discharged shots to accomplish the larceny."

In response to the first question, the court stated: "Only the essential elements of the crime charged need be proved by the state. Therefore, any allegations in the information [that are] not essential to prove the elements of the crime charged need not be proved. Only the essential elements need be proved, and any allegations, any information that is not essential to that does not have to be proved."

---

[4] The jury's second note stated: "Would you please restate the elements of the first count. Does the discharge . . . in the first count have to be directly associated with the larceny, or can it be part of the entire event?"

The court answered the second question by repeating that the state did not have to prove that the gun was fired to satisfy the second element of the statute. The court again defined a deadly weapon as "any weapon, whether loaded or unloaded, from which a shot may be discharged." The court also stated: "It's obvious from the statutory definition that, even if he had an unloaded weapon from which a shot could be fired, it is a deadly weapon. The evidence as to the shooting of the gun only goes to the proof that a shot can be fired from the weapon."

In response to the third point raised by the jury's note, the court responded: "Larceny becomes a robbery when force or the threat of force is used. So what you have is a larceny becoming a robbery when there is the use of force or the threat to use force. That which makes a robbery, as alleged in the first count of part A, is the robbery, or the robber at the time of the robbery is armed with a deadly weapon. So what is alleged, robbery in the first degree, as alleged in part A of the first count, becomes a robbery such as alleged when the robber at the time of the robbery is armed with a deadly weapon."

An exception was noted to this final supplemental instruction by the defendant, who claimed that the wording of the bill of particulars that was incorporated into the substitute information made specific reference to the fact that shots were discharged to accomplish this larceny and that the state had the burden of proving that the defendant committed the offense in substantially the manner described in the bill of particulars.

The defendant claims that the court's instructions to the jury concerning the defendant's kicking and beating the victim to support the essential element of physical force, and to the effect that the jury was not bound by the specifics of the bill of particulars with respect

to the robbery charge, effectively enlarged the specific crime of robbery thereby allowing the jury to convict him on the basis of an uncharged portion of the statute. The defendant argues that "in light of the arguably less than perfect preservation" of the trial court record, we should review his claim under *Evans* and *Golding*[5] because his claim of enlargement "implicating the fundamental constitutional right to be informed of the nature and cause of the accusation against him is adequately supported by the record" and because similar unpreserved claims under *Evans* have been reviewed. We do not agree.[6]

The court instructed that if the jury accepted the evidence of the beating and the kicking of Orlando Vega as true, it could consider that evidence as the physical force element of robbery. These comments do not constitute an enlargement of the crime charged, or an instruction on an uncharged portion of the robbery statute.

The court instructed the jury on every essential element of the crime charged[7] in an adequate manner to

[5] The defendant seeks review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).

[6] Under *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged violation beyond a reasonable doubt.

The defendant has presented arguments that, if correct, would lead to the conclusion that there was a violation of a fundamental constitutional right that clearly deprived the defendant of a fair trial. We are also persuaded that if the defendant is correct, the constitutional violation would not be subject to harmless error analysis. We, therefore, address the merits of the claim to determine whether the alleged constitutional violation clearly exists.

[7] Although the defendant was charged with robbery in the first degree, a jury instruction on the lesser included offense of robbery in the third degree, General Statutes § 53a-136, was also requested by the defendant and given.

apprise the jury of those elements in order to guarantee the defendant a fair trial. Since the record does not show that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial, the defendant's claim regarding the "kicking and beating" fails to meet the third condition under *Golding,* and is not entitled to review.

The defendant also claims that the supplemental instruction that was given in response to the jury's third note improperly enlarged the crime with which he was charged under § 53a-134 (a) (2). Although this issue is related to the defendant's first challenge to the jury instructions, it is a distinct issue and must be addressed separately. Unlike the first claim, this issue was properly preserved, and, therefore, no additional analysis is required for us to grant full appellate review.

The instruction challenged here by the defendant informed the jury that it only had to find that the statutory elements of the crime were proven to convict the defendant and that it was not limited to the specific allegations in the charging document. The defendant argues that because the substitute information and bill of particulars alleged that he discharged shots to accomplish the larceny of Orlando Vega's property, the jury must find that shots were fired in order to find him guilty, and that the instruction was therefore improper.

The purpose of a bill of particulars is " ' "to supply both the accused and the court *additional* information concerning an accusation that the defendant has committed an act or acts constituting a criminal offense." (Emphasis added.) 41 Am. Jur. 2d, Indictments and Informations, § 163.' " *State* v. *Roque,* 190 Conn. 143, 154, 460 A.2d 26 (1983), quoting *State* v. *Coleman,* 167 Conn. 260, 269, 355 A.2d 11 (1974). The test to be applied is whether the state's pleadings informed the defendant of the charge against him with sufficient pre-

cision to allow him to prepare a defense, avoid prejudicial surprise and plead his guilt or innocence in bar of any future prosecution for the same offense. *State* v. *Ballas,* 180 Conn. 662, 664, 433 A.2d 989 (1980); *State* v. *Sumner,* 178 Conn. 163, 168, 422 A.2d 299 (1979). The bill of particulars limits the state to " 'proving that the defendant has committed the offense in *substantially* the manner described.' *State* v. *Ruiz,* 171 Conn. 264, 270, 368 A.2d 222 (1976)." (Emphasis added.) *State* v. *Belton,* 190 Conn. 496, 501, 461 A.2d 973 (1983).

The essential elements of § 53a-134 (a) (2) as charged are that a person is guilty of robbery in the first degree when in the commission of the crime he is armed with a deadly weapon. The trial court properly instructed the jury that it was not required to find that the defendant "discharged shots" during the robbery to find him guilty, despite the allegations of the bill of particulars. Under this subdivision, the state did, however, have the burden of proving beyond a reasonable doubt that the firearm used was, in fact, a deadly weapon, capable of firing a shot. *State* v. *Hawthorne,* 175 Conn. 569, 572, 402 A.2d 759 (1978).

Further, the jury's verdict of guilty under both subdivisions (a) (2) and (4) renders the defendant's issue moot. Clearly, the substitute information that incorporated the bill of particulars refers to subdivision (a) (4) of General Statutes § 53a-134 in the second part of the first count specifying that the defendant while committing a larceny "displayed or threatened the use of what he represented by his words or conduct to be a pistol or revolver." "[W]here an information alleges a crime to have been committed in more than one way, a guilty finding stands if the evidence would support a conviction based upon any one of the statutory alternatives." *State* v. *Eason,* 192 Conn. 37, 42, 470 A.2d 688 (1984); *State* v. *Cofone,* 164 Conn. 162,

168, 319 A.2d 381 (1972); see *Crain* v. *United States,* 162 U.S. 625, 634, 16 S. Ct. 952, 40 L. Ed. 1097 (1895). "The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Turner* v. *United States,* 396 U.S. 398, 420, 90 S. Ct. 642, 24 L. Ed. 2d 610 (1970); *State* v. *Lode,* 36 Conn. Sup. 603, 609, 421 A.2d 880 (1980). Because the state charged the two violations of § 53a-134 (a) in the conjunctive, the verdict must stand if the evidence is sufficient as to either of the acts charged.

The defendant's next claim is that the trial court improperly denied his motions for judgment of acquittal that were made at the close of the state's evidence and again after the verdict. He argues that there was insufficient evidence presented by the state to support his conviction of robbery in the first degree. Such a claim requires that we undertake a two part task. First, we must review the evidence presented at trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether the jury could reasonably have concluded, on the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Simino,* 200 Conn. 113, 116–17, 509 A.2d 1039 (1986); *State* v. *Braxton,* 196 Conn. 685, 691, 495 A.2d 273 (1985). "Each essential element of the crime charged must be established by proof beyond a reasonable doubt . . . ." *State* v. *Stankowski,* 184 Conn. 121, 126, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981). Jurors are not "expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their

conclusions correct." *Chicago, M. & St. P. Ry. Co.* v. *Moore,* 166 F. 663, 666 (8th Cir. 1909), quoted in *State* v. *Williams,* 202 Conn. 349, 355, 521 A.2d 150 (1987); *Frankovitch* v. *Burton,* 185 Conn. 14, 22, 440 A.2d 254 (1981).

The defendant specifically claims that the evidence was insufficient to prove that the defendant discharged shots to accomplish the larceny or that he displayed or threatened the use of what he represented by his words or conduct to be a pistol or other firearm during the robbery. The defendant also claims that the state failed to present any evidence that established the necessary connection between the threat or use of physical force and the commission of the larceny, and that the defendant possessed the requisite intent.

From the evidence offered by the state, taken in the light most favorable to sustaining the verdict, we cannot say as a matter of law that the jury as the trier of fact could not reasonably have concluded as it did. It could reasonably have concluded that the defendant, while armed with a weapon capable of firing a shot, committed a robbery, firing shots, taking the victim's wallet, pistol-whipping him and kicking and beating him. There is more than sufficient evidence to support a reasonable inference that the defendant intended to commit the crime charged, and, where such evidence exists, whether such an inference should be drawn is properly a question for the jury to decide. *State* v. *Morrill,* 193 Conn. 602, 609, 478 A.2d 994 (1984).

There was a sufficient basis established by the cumulative evidence from which the jury could logically infer and on which it could properly rely to predicate its verdict of guilty to the charge of robbery in the first degree. Thus, the trial court properly denied the defendant's motions for judgment of acquittal.

The defendant's final claim is that the court improperly failed to strike the testimony of Manny Vega, a witness for the state, because an officer who interviewed Manny Vega destroyed his field notes.

The following facts are relevant to this issue. Officer Michael Dakin of the Hartford police department testified for the state that he and Detective Frank Craddock had interviewed witnesses to this incident including Manny Vega, and that he had subsequently destroyed the field notes that he had taken during these interviews. The defendant then moved for a mistrial or, in the alternative, that either Manny Vega's testimony or Dakin's testimony, or both, be stricken because of the destruction of the field notes. During the state's voir dire, in the absence of the jury, Dakin testified that his field notes consisted of only the preliminary information that he needed to prepare the arrest warrant and were not a word for word recording of everything Manny Vega said. Dakin further testified that Craddock was responsible for taking Vega's actual statement. The court denied all of the defendant's motions regarding this issue, and found that none of Dakin's notes were intended to be Manny Vega's statement and that the notes were not destroyed in bad faith.[8]

In the typed, signed and sworn statement that was taken by Craddock, Manny Vega stated that he had seen the defendant beat and rob Orlando Vega. This allegation was included in the arrest warrant affidavit, and Manny Vega, Dakin, and Craddock each testified at trial that he made this statement during the initial interview with Dakin.

The defendant disputes the court's finding that Dakin's notes were not a statement as defined by Prac-

[8] The defendant requested and the court gave the jury an adverse inference instruction regarding the destruction of Dakin's field notes.

tice Book § 749[9] subject to production pursuant to Practice Book § 752.[10] The defendant, therefore, contends that the intentional destruction of the notes required the automatic sanction of striking Manny Vega's testimony.[11] We do not agree.

In making the determination of whether the field notes constituted a statement, "the trial court exercises broad discretion . . . and its findings will be disturbed only if they are clearly erroneous. (Citations omitted.)" *State* v. *Black,* 23 Conn. App. 241, 244, 579 A.2d 1107 (1990).

" '[A] police officer's interview notes may be subject to disclosure for use by the defendant in cross-examining the witness, if the officer's notes meet either of § 749's alternate definitions of a statement' "; *State* v. *Belle,* 215 Conn. 257, 266, 576 A.2d 139 (1990); or if they are signed or otherwise adopted. Id. The record does not support the claim that the notes were a "substantially verbatim" account of Manny Vega's words. They constituted the highlights of the interview

[9] Practice Book § 749 provides: "The term 'statement' as used in Sec. 748 means:

"(1) A written statement made by a person and signed or otherwise adopted or approved by him; or

"(2) A stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by a person and recorded contemporaneously with the making of such oral statement."

[10] Practice Book § 752 provides: "After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witness has testified."

[11] Even if we assume arguendo that these notes constituted a statement and were intentionally destroyed, absent bad faith, an automatic sanction of striking a witness' testimony is not required. *State* v. *Johnson,* 214 Conn. 161, 168, 571 A.2d 79 (1990); *State* v. *Williamson,* 212 Conn. 6, 15–16, 562 A.2d 470 (1989).

and were neither signed nor adopted by anyone. At best they were nonverbatim rough notes intended to aid in preparing the arrest warrant affidavit. See *State* v. *Myers,* 193 Conn. 457, 471, 479 A.2d 199 (1984). Because the trial court's ruling that Dakin's notes did not constitute Vega's statement was not clearly erroneous, we cannot hold that its denial of the defendant's motion to strike Vega's testimony was improper.[12]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] Because we have concluded that the trial court's finding that Dakin's notes were not a statement as defined by Practice Book § 749 was proper, we need not proceed further to determine whether the court correctly determined that the notes were not destroyed in bad faith.