STATE OF CONNECTICUT *v.* ANTHONY LEE CLEMONS
(10451)

LANDAU, FREEDMAN and SCHALLER, Js.

Argued April 27—decision released June 15, 1993

*Theresa M. Dalton,* assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Gary W. Nicholson,* assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of rob-

bery in the first degree in violation of General Statutes §§ 53a-8 (a)[1] and 53a-134 (a) (2).[2] The defendant claims that the trial court improperly (1) denied his motion for judgment of acquittal and (2) sua sponte amended the information to prevent the jury from considering the lesser included offense of robbery in the second degree. We reverse the judgment of the trial court.

The jury reasonably could have found the following facts. On August 30, 1987, soon after midnight, two African-American men approached the victim on Booth Street in Stratford. One of the men was carrying a sawed-off shotgun, the other a handgun. The man with the handgun pulled back a slide on the top of the gun, characteristic of the operation of a .45 caliber automatic. The man then told the victim to empty his pockets. The victim complied, handed over his wallet and ran from the scene. The two men then climbed into the backseat of a dark four door sedan, and the car drove away on Barnum Avenue toward Bridgeport. The victim was later unable to identify the perpetrators of the crime.

Masto Dilorenzo witnessed the crime from his second story apartment and contacted the Stratford police department. In response, the police alerted Officer Joseph Loschiavo, who was on patrol duty. He drove to the Stratford-Bridgeport city line on Barnum Avenue. More than one and one-half miles from the scene of the robbery, Loschiavo observed a dark four door

[1] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[2] General Statutes § 53a-134 (a) provides in pertinent part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

sedan heading toward Bridgeport. Loschiavo reported the license number of the sedan to his department and learned that the number was registered to a different car.

Loschiavo activated the lights and siren of his police car. As he did so, the driver of the sedan increased the car's speed considerably. He then lost control of the vehicle and collided with an oncoming car. Immediately after the collision, four African-American men got out of the sedan and ran. In the course of the escape, the driver of the sedan rolled across the hood of Loschiavo's car. Loschiavo was able to get a close look at the driver and later identified him as the defendant.

After checking the driver of the other car in the collision and determining that he did not need assistance, Loschiavo pursued the suspects through an open field and over railroad tracks. Following a path toward Father Panik Village in Bridgeport, the four suspects evaded Loschiavo.

Along the path, Loschiavo found a loaded .38 caliber revolver. The revolver was not the same as the handgun used in the robbery at issue. Moreover, at no time prior to discovering the gun did Loschiavo observe the gun or anything resembling a gun on any of the four suspects. Loschiavo returned to the scene of the accident and looked into the sedan driven by the defendant. There, he found an arrow quiver that had been altered to house a sawed-off shotgun.

Subsequently, the police undertook an investigation of the crime. Loschiavo reviewed nine photographs selected by another police officer and identified the defendant as the driver of the sedan. Detective Gene Vedock tested the .38 caliber for fingerprints and found none. He also found that the gun was operable. The police dusted the sedan and uncovered six fingerprints, none of which matched the defendant's.

The state charged the defendant with robbery in the first degree. The information alleged that the defendant "did intentionally aid another person, while the latter stole certain property from [the victim] . . . and in the course of the commission of the crime or of immediate flight therefrom, [the defendant] or another participant was armed with a deadly weapon, to wit: a pistol, in violation of Section 53a-8 and Section 53a-134 (a) (2) of the Connecticut General Statutes." The case proceeded to trial.

At the trial's conclusion, the judge instructed the jury to consider only that portion of § 53a-134 (a) concerning the immediate flight from a crime. The jury returned a guilty verdict of robbery in the first degree.[3] The trial court denied the defendant's subsequent motion to set aside the verdict. This appeal followed.

The defendant claims that the evidence presented to the jury cannot support the conviction under § 53a-134 (a) (2) because it failed to establish beyond a reasonable doubt that either the defendant or any of the alleged participants was armed with a deadly weapon in the course of immediate flight from the scene of the robbery. We agree.

Our standard of review for challenges to the sufficiency of the evidence is well settled. In such cases, we undertake a two part analysis. "We first construe the evidence presented at trial in a light most favorable to sustaining the verdict, and then determine whether the jury could reasonably have found upon the facts established and the inferences reasonably drawn therefrom, that a cumulative effect of the evidence estab-

---

[3] Judgment of conviction also entered against the defendant for larceny in the first degree in violation of General Statutes §§ 53a-119 (8) and 53a-122 (a) (2) that arose out of an alleged car theft. The defendant does not appeal from this conviction. The jury acquitted the defendant of carrying a pistol without a permit in violation of General Statutes §§ 29-35 and 29-37 (b).

lished guilt beyond a reasonable doubt. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Baldwin,* 224 Conn. 347, 368, 618 A.2d 513 (1993); *State* v. *Hamilton,* 30 Conn. App. 68, 618 A.2d 1372 (1993). "In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." *State* v. *Sinclair,* 197 Conn. 574, 576, 500 A.2d 539 (1985).

Under § 53a-134 (a) (2), the defendant's culpability is predicated on his alleged participation in a robbery that involved the use of a deadly weapon. "Deadly weapon" is defined in General Statutes § 53a-3 (6) as "any weapon, whether loaded or unloaded, from which a shot may be discharged . . . ." In cases involving firearms, the state has the burden of proving beyond a reasonable doubt that the firearm used was, in fact, a deadly weapon, capable of firing a shot. *State* v. *Hawthorne,* 175 Conn. 569, 572, 402 A.2d 759 (1978); *State* v. *Torres,* 24 Conn. App. 316, 325, 588 A.2d 232, cert. denied, 218 Conn. 911, 591 A.2d 813 (1991).

In the present case, the issue is whether the state proved beyond a reasonable doubt that the defendant or a participant in the alleged robbery was armed with a deadly weapon, to wit, a pistol, in the course of immediate flight from Booth Street, where the robbery occurred. Initially, we note that the only deadly weapon remotely linked to the conviction of the defendant is the revolver found on the path to Father Panik Village. This is the only weapon that the police discovered and the only weapon known to be operable at the time the crime was committed. The state did not introduce into evidence the two weapons described by the victim. Nor has the state attempted to establish that these weapons qualify for purposes of a conviction under § 53a-134 (a) (2). This is why the trial court, through its instructions, focused the jury's attention on whether

the defendant or a participant was armed with a deadly weapon in the course of *immediate flight* from the crime.[4]

The critical question, therefore, is whether the state presented sufficient evidence to establish that the defendant or a participant was armed with the *revolver* that Loschiavo found on the path to Father Panik Village.

Loschiavo did not observe the revolver in the possession of the suspects. Nor did he observe any of the suspects discard the gun as they fled down the path. Fingerprint tests on the revolver were inconclusive and it is undisputed that the revolver was not one of the two weapons described by the victim. There is thus no direct evidence that either of the suspects ever possessed the revolver found by Loschiavo.

While "the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence"; *State* v. *Hamilton,* supra, 72; inferences must still be reasonable and must in the aggregate establish the essential elements of a crime beyond a reasonable doubt. Here, to find the defendant guilty of robbery in the first degree, the jury would have to infer that because the suspects traveled on the path on which Loschiavo discovered the revolver, one of them was responsible for the disposal of the gun. Unsupported by the cumulative effect of additional circumstantial evidence, this inference is attenuated at best.

The victim and the eyewitness of the robbery identified only three persons as participants in the robbery: the two that actually approached the victim and the

---

[4] The trial court explained the circumstances to the jury as follows: "Now there is evidence before you as to the ability of that gun which is in evidence [the .38 caliber revolver] to discharge a shot. But there is no evidence about the shotgun, alleged shotgun, or this automatic being able to discharge a shot . . . ."

driver of the sedan. No mention was made of a fourth participant. The fact that a fourth person was present in the sedan does not establish that he participated in the crime. See *State* v. *Aparo,* 223 Conn. 384, 402, 614 A.2d 401 (1992) (§ 53a-8 requires proof that accessory *intended* to aid principal and *intended* to commit the offense charged); *State* v. *Foster,* 202 Conn. 520, 535, 522 A.2d 277 (1987) (same). Accordingly, even assuming that this fourth person dropped the revolver on the path, we cannot conclude that a participant in the crime was armed with a deadly weapon.

In summary, viewing the evidence in the light most favorable to sustaining the verdict, we cannot uphold the judgment of conviction for robbery in the first degree. The sole evidence linking the defendant to a deadly weapon, namely, the presence of a gun on a foot path, does not support the judgment of the trial court. Mindful of the important role of the jury in our system of criminal justice, we recognize that great deference is afforded the factual findings of the trier. *State* v. *Osman* 218 Conn. 432, 437, 589 A.2d 1227 (1991). In this case, however, the evidence is simply too attenuated to support the judgment of conviction for robbery in the first degree.[5]

The judgment is reversed as to the conviction of robbery in the first degree only and the case is remanded with direction to render judgment of not guilty on that charge.[6]

In this opinion the other judges concurred.

---

[5] In light of our holding with respect to the defendant's first claim, we need not address the defendant's second claim.

[6] We note that in some instances it is appropriate to remand the case with direction to modify the judgment so as to reflect a conviction for a lesser included offense. *State* v. *Carpenter,* 214 Conn. 77, 85, 570 A.2d 203 (1990), on appeal after remand, 220 Conn. 169, 595 A.2d 881 (1991), cert. denied,     U.S.    , 112 S. Ct. 877, 116 L. Ed. 2d 181 (1992); *State* v. *McNeil,* 21 Conn. App. 519, 523, 574 A.2d 1314, cert. denied, 216 Conn. 807, 580 A.2d 64 (1990). Under the information of this case, however, second degree robbery is not a lesser included offense of first degree robbery. *State* v. *Dolphin,* 203 Conn. 506, 516–18, 525 A.2d 509 (1987); *State* v. *King,* 6 Conn. App. 247, 252, 504 A.2d 560 (1986).