STATE OF CONNECTICUT *v.* YOMAR FANA
(AC 27642)

DiPentima, Robinson and Stoughton, Js.

Argued March 26—officially released August 26, 2008

*Charles F. Willson*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich*, state's attorney, and *Mark A. Stabile*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

STOUGHTON, J. The defendant, Yomar Fana, appeals from the judgments of conviction, rendered after a jury trial, of two counts of burglary in the third degree in violation of General Statutes § 53a-103, two counts of conspiracy to commit burglary in the third degree in violation of General Statutes §§ 53a-48 and 53a-103, two counts of criminal mischief in the first degree in violation of General Statutes § 53a-115, two counts of conspiracy to commit criminal mischief in the first degree in violation of General Statutes §§ 53a-48 and 53a-115, and one count each of conspiracy to commit larceny in the first degree in violation of General Statutes §§ 53a-48 and 53a-122, and attempt to commit larceny

in the first degree in violation of General Statutes §§ 53a-49 and 53a-122. On appeal, the defendant claims that the trial court improperly (1) denied his motion to sever the charges related to the separate burglaries, (2) instructed the jury, (3) denied his motion to suppress evidence and (4) denied his motions for a judgment of acquittal on the charges of conspiracy to commit larceny in the first degree and attempt to commit larceny in the first degree. We agree with the defendant's fourth claim only.

The following facts reasonably could have been found by the jury on the basis of the evidence presented. On the morning of January 26, 2004, an assistant manager of the Cumberland Farms store, located on Day Street in Brooklyn, arrived at 4 a.m. to open the store for business. When she unlocked the door, rather than hearing the familiar sound of the store's alarm, she was confronted with silence. After noticing that some of the store's merchandise was disturbed, she left the building and called the police. The police arrived at the store shortly thereafter.

The police investigation revealed that one or more individuals had cut a hole, measuring roughly two feet square, through the roof of the Cumberland Farms, near the area of the cash register. At least one person had entered the store. The store's safe, containing the cash the store kept on site, had been dragged to the rear of the storeroom. The bottom drawer of the safe, which at the time held $446, had been broken into. The perpetrator or perpetrators had been unsuccessful, however, in breaking into the top drawer of the safe. In addition, an automated teller machine, located in the front of the store, was unbolted and dragged across the store to the back of the room, although it was not successfully broken into. The machine contained $7500 at the time.

The police discovered numerous items left behind by the burglars. Inside the store, the police discovered two

bags containing burglar's tools. Additionally, the police discovered a piece of paper with the defendant's shoe print on it. Outside the store, the police discovered knit caps, a bandana and a Cumberland Farms' grocery bag containing money. The hats and bandana were later tested for DNA, and the defendant could not be eliminated as a contributor of DNA to one of the hats.

About one month after the Cumberland Farms burglary, on February 29, 2004, Michael Robinson and Derek Halkett, both of whom are state police officers, responded to an alarm at the A & P Wines and Spirits store (A & P) in Danielson.[1] When they arrived, they noticed a Nissan Altima speeding out of the parking lot. Robinson pursued the speeding car, while Halkett remained to investigate the alarm. Robinson soon approached the speeding vehicle and signaled for it to stop. The car was occupied by Angel Fana, who was driving, and by Jamie Garcia, Wilson Martinez and the defendant. Not having received any information confirming that there had been a burglary at the A & P, the officer permitted the vehicle to leave.

Robinson then returned to the A & P to meet a keyholder to the store so that he could enter the store and complete the investigation. Inside, he noticed that the alarm box had been tampered with, and a hole, approximately four feet by four feet, had been cut through the roof. Outside the store, Robinson discovered a duffle bag containing burglar's tools and a red knit hat. Robinson immediately reported a suspected burglary, and Halkett, joined by another police officer, commenced pursuit of the Altima. The Massachusetts state police were also notified because the Altima was heading toward that state. Soon after the Altima crossed the state line, a Massachusetts police officer stopped the

---

[1] Danielson is a part of the town of Killingly, which neighbors Brooklyn, the location of the Cumberland Farms burglary.

car, and the four occupants were arrested, apparently for having burglar's tools, and were taken to a Massachusetts police barracks. While held in the barracks, the defendant and the other occupants of the car met with Trooper Norman Nault of the Connecticut state police. Nault seized, among other things, the clothing that all four men were wearing, including the defendant's sneakers.

The defendant was subsequently arrested in connection with both the Cumberland Farms and A & P incidents. The court granted the state's motion to consolidate the charges relating to the two incidents into a single trial. Later, the defendant moved to sever the two cases, asserting likely jury confusion due to the similar nature of the facts underlying the two incidents. The court denied the defendant's motion. The defendant was convicted, after a trial to the jury, of the several counts related to the two burglaries, and the court rendered judgments. From these judgments the defendant appeals.

I

The defendant first claims that the court improperly denied his motion to sever the charges related to the Cumberland Farms and A & P incidents. The defendant asserts that the factual circumstances underlying the two incidents are so similar that juror confusion likely resulted from trying the cases together. The defendant further asserts that he was prejudiced because the jurors may have improperly relied on evidence from one incident to find guilt on the charges related to the other.

The following facts are relevant to the resolution of the defendant's claim. The court entertained argument on the defendant's motion to sever on January 24, 2006. The defendant's counsel stated: "We're asking for the case to be severed." Counsel further explained: "I think

it's especially appropriate in this case, Your Honor . . . it's going to be quite a bit easier for the state if [the jurors] hear evidence of both of these cases to prove any one of them because the evidence they're going to use in one is going to obviously taint the way the jury feels in the other."

The state then argued: "There are similarities to the offenses, which in some instances would argue against joinder. However, the evidence, I believe, in this case is going to show that this was a *common scheme*. And evidence of one of the crimes would have been—would be admissible in the trial of [the other]. . . . So, the cases are legally connected. It was essentially an *ongoing conspiracy*. Evidence from one trial would be admissible in the other trial." (Emphasis added.) The court then denied the motion to sever.

Practice Book § 41-18 provides: "If it appears that a defendant is prejudiced by a joinder of offenses, the judicial authority may, upon its own motion or the motion of the defendant, order separate trials of the counts or provide whatever other relief justice may require." Our Supreme Court has instructed that in "deciding whether to sever informations joined for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb." (Internal quotation marks omitted.) *State* v. *Davis*, 286 Conn. 17, 28, 942 A.2d 373 (2008). "The court's discretion regarding joinder, however, is not unlimited; rather, that discretion must be exercised in a manner consistent with the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Ellis*, 270 Conn. 337, 375, 852 A.2d 676 (2004). In *State* v. *Boscarino*, 204 Conn. 714, 722–24, 529 A.2d 1260 (1987), our Supreme Court determined that courts should carefully evaluate three factors when considering whether a motion to sever should be granted. The *Boscarino* factors are "(1) whether the charges involve discrete,

easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial." (Internal quotation marks omitted.) *State* v. *Ellis*, supra, 375. "If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Internal quotation marks omitted.) Id. At least with regard to the first *Boscarino* factor, a defendant will not be able to demonstrate prejudice by a consolidation of charges if the evidence presented would have been cross admissible at the two trials, were the charges tried separately. See *State* v. *Greene*, 209 Conn. 458, 464–65, 551 A.2d 1231 (1988).

The defendant, on appeal, relies solely on the first *Boscarino* factor to argue that the court abused its discretion by denying his motion to sever. He asserts that the factual circumstances of the two burglaries were so similar as to lead to jury confusion. He further argues that the manner in which the burglaries were committed was not so similar as to constitute signature crimes, and, therefore, the evidence would not have been cross admissible to prove identity had the cases been tried separately.[2] The state, on the other hand, argues that breaking into a convenience store by cutting a hole in the roof is so distinctive as to constitute a signature crime. Therefore, the state asserts, the evidence would have been cross admissible, and, thus, the defendant has not demonstrated prejudice from the denial of his motion.

Although both parties on appeal have briefed the issue of whether the evidence would have been cross

---

[2] Connecticut Code of Evidence § 4-5 (b) provides in relevant part: "Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than [to prove criminal tendencies] such as to prove . . . identity [or a] common plan or scheme . . . ."

admissible to prove identity, the record reveals that this ground for denying the motion to sever was not raised before the court. During argument on the motion to sever, the state argued that the motion should be denied because the evidence would be cross admissible on the ground that the two incidents were part of a common plan or scheme of criminal activity. It was on this basis that the court denied the motion to sever.

The defendant, on appeal, does not challenge the cross admissibility of the evidence, were the cases tried separately, on the basis of the incidents being part of a common plan of criminal activity, the ground on which the motion was denied. Therefore, the defendant has failed to show that the court's denial of his motion to sever caused him prejudice, and this claim fails.

## II

The defendant next claims that the court improperly charged the jury. Specifically, the defendant argues that the court's instruction to the jury improperly implied that he had a duty to present evidence and to testify and that the court improperly delivered a "Chip Smith" charge and improperly marshaled evidence in favor of the state. We disagree.

The defendant concedes that none of his claimed instructional errors was raised at trial and are, therefore, unpreserved. He seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Our Supreme Court announced in *Golding* that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to

demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40.[3]

## A

The defendant first argues that the court's charge to the jury improperly implied that he had an obligation to present evidence and to testify in his defense. The defendant challenges the following language of the court's instruction: "You must consider all the evidence in the case, and you may decide that the testimony of a smaller number of witnesses on one side has greater weight than a larger number on the other side. It's the quality of the evidence, not the quantity of the evidence, you should consider."

The defendant asserts that the quoted portion of the charge improperly instructed the jury on the state's burden of proof, the presumption of innocence and his constitutional right not to testify, and, therefore, he asserts that his argument raises matters of constitutional concern in satisfaction of the second *Golding* requirement. We agree with the state that the contested language is part of the court's credibility instruction, which is not constitutional in magnitude, and that the jurors reasonably understood it to be such. Therefore, we agree with the state that the issue is not eligible for *Golding* review. See *State* v. *Schiappa*, 248 Conn. 132, 165–66, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999).

After giving a brief overview of the meaning of evidence, the court turned to the issue of credibility. The

---

[3] In the alternative, the defendant also seeks a reversal of his conviction pursuant to the plain error doctrine. See Practice Book § 60-5. "Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Bosque*, 106 Conn. App. 783, 785, 943 A.2d 1115, cert. denied, 287 Conn. 913, 915 A.2d 1288 (2008). We are unpersuaded that the court committed plain error.

court clearly indicated to the jury that the topic of the following segment of the charge was going to be credibility by declaring: "As to credibility of witnesses . . . ." The court instructed the jury that it had the responsibility to decide the credibility of the various witnesses. The court explained that the jury could believe part, all or none of a witness' testimony. The court further provided some guidance to the jurors to help them assess credibility. The court suggested they consider whether the witness could see or hear the incidents described, the witness' manner while testifying, and whether the witness' testimony seemed consistent and reliable. The court followed this with the challenged portion of the charge. Following that, the court instructed the jury on expert testimony and provided guidance on evaluating the credibility of experts.

The court next instructed the jury on the presumption of innocence and explained: "This presumption of innocence was with this defendant when he was first presented for trial in this case; it continues with him throughout this trial . . . ." After this, the court stated: "Burden of proof," and proceeded to instruct the jury on the state's burden of proof, explaining, among other things, that "the defendant does not have to prove his innocence." Later, the court also instructed the jury: "I want to advise you that an accused person has the option to testify or not to testify at their trial. The defendant is under no obligation to testify, he has a constitutional right not to testify and you must draw no unfavorable inference from his failure to testify."

We conclude the court clearly intended to convey to the jury, in the portion of the instruction challenged by the defendant, the idea that its determination on whether one witness is credible should not rest solely on whether others testify as to the same facts but, rather, that in some instances, the jury may find that several witnesses all lack credibility even if they appear

to agree with each other. We further conclude that the court clearly conveyed to the jury that it was discussing credibility assessment and not the state's burden of proof, the defendant's right not to testify or the presumption of innocence, particularly as these points were specifically addressed later. Having determined that the challenged instruction was an instruction on credibility, which does not rise to the level of constitutional magnitude, we decline to afford this claim *Golding* review.

### B

The defendant next argues that the Chip Smith charge[4] delivered to the jury was improper because it directed the jurors in the minority, but not those in the majority, to reevaluate their positions when the jury was deadlocked on the counts arising from the Cumberland Farms incident.[5]

This argument is reviewable pursuant to *Golding*, as it raises a constitutional issue and there is an adequate record for review. See *State* v. *O'Neil*, 261 Conn. 49, 58–59, 801 A.2d 730 (2002). Nevertheless, the defendant's argument must fail because there is controlling Supreme Court case law directly on point that is contrary to the defendant's position. See, id., 63–74.

Our Supreme Court revised the traditional Chip Smith charge in *State* v. *O'Neil*, supra, 261 Conn. 74–75.[6] The

[4] "A Chip Smith instruction reminds the jurors that they must act unanimously, while also encouraging a deadlocked jury to reach unanimity." (Internal quotation marks omitted.) *State* v. *O'Neil*, 261 Conn. 49, 51 n.2, 801 A.2d 730 (2002); see also *State* v. *Smith*, 49 Conn. 376, 386 (1881).

[5] The defendant does not argue that as the Chip Smith charge was applied to the particular facts of his case, the jurors in the minority were actually coerced by the court but, rather, that the instruction itself was improper because it was directed only to the jurors in the minority. See *State* v. *O'Neil*, supra, 261 Conn. 63.

[6] The revised Chip Smith charge is as follows: "The instructions that I shall give you now are only to provide you with additional information so that you may return to your deliberations and see whether you can arrive at a verdict.

charge delivered by the court here is virtually identical to the charge that our Supreme Court promulgated.

The argument advanced by the defendant, which is that the jurors holding the majority position and those holding the minority view must all be charged to reconsider their positions when deadlocked, is the same argument that was rejected by our Supreme Court. See id.; cf. id., 83 (*Borden, J.,* concurring). Therefore, this argument must fail.

C

The defendant's third argument involving the jury charge is that the court improperly marshaled the evidence in the state's favor. We disagree.

After the commencement of deliberations, the jury sent a note to the court, requesting the court to summarize the evidence regarding shoe prints discovered on a sheet of paper at Cumberland Farms. Specifically, the

"Along these lines, I would like to state the following to you. The verdict to which each of you agrees must express your own conclusion and not merely the acquiescence in the conclusion of your fellow jurors. Yet, in order to bring your minds to a unanimous result, you should consider the question you have to decide not only carefully but also with due regard and deference to the opinions of each other.

"In conferring together, you ought to pay proper respect to each other's opinions and listen with an open mind to each other's arguments. If the much greater number of you reach a certain conclusion, dissenting jurors should consider whether their opinion is a reasonable one when the evidence does not lend itself to a similar result in the minds of so many of you who are equally honest and equally intelligent, who have heard the same evidence with an equal desire to arrive at the truth and under the sanctions of the same oath.

"But please remember this. Do not ever change your mind just because other jurors see things differently or to get the case over with. As I told you before, in the end, your vote must be exactly that—your own vote. As important as it is for you to reach a unanimous agreement, it is just as important that you do so honestly and in good conscience.

"What I have said to you is not intended to rush you into agreeing on a verdict. Take as much time as you need to discuss the matter. There is no need to hurry." *State* v. *O'Neil,* supra, 261 Conn. 74–75.

jurors asked the court the following question, as relayed by the court to counsel: "We would like to have any information pertaining to the shoe print on the computer paper on Cumberland Farms on January 26, 2004." The court told counsel that it believed that the jury already had all the evidence and that it would so tell the jurors. The prosecutor stated: "I believe Detective [David] Lamoureux testified about seizing [the paper with the shoe print] and where it was . . . ." The court then stated: "Well . . . I know [that defense counsel] asked a number of questions about where the particular exhibits were found, and I will offer up to them that if they want that read back, we can get that in a form of a question. Obviously, they're entitled to have that read back."

The court then called the jurors back into the courtroom. It addressed them, in relevant part, as follows: "Good afternoon. . . . I have reviewed your question, I've read it into the record, I've shared it with counsel, and the direct answer to your question is that you have all of the information that has been admitted into evidence. *There was some testimony, I believe, as to the shoe—a shoe being taken from [the defendant] when he was in the custody of the Massachusetts state police.* There was also some testimony, I believe, from Detective Lamoureux as to where the papers were found inside the Cumberland Farms store when he found them and took them into evidence." (Emphasis added.)

The defendant argues that the court improperly marshaled the evidence because its answer "clearly suggested, if not highlighted, its observation that the shoes [the] defendant wore at the time of his arrest left the print on the computer paper found inside the Cumberland Farms."

We agree that this claim is reviewable pursuant to *Golding* in that the record is adequate and the claim

raises a constitutional question. "Because the defendant failed to raise this issue in the trial court, our review of this claim on appeal is limited to whether the court's conduct so deviated from the impartiality required that it deprived the defendant of a fair trial." *State* v. *Tatum*, 219 Conn. 721, 735, 595 A.2d 322 (1991).

The purpose of marshaling the evidence is to provide a fair summary of the evidence and nothing more; to attain that purpose, the trial judge must show strict impartiality. To avoid the danger of improper influence on the jury, a recitation of the evidence should not be so drawn as to direct the attention of the jury too prominently to the facts in the testimony on one side of the case, while sinking out of view, or passing lightly over, portions of the testimony on the other side, which deserve equal attention. On review, we do not evaluate the court's marshaling of the evidence in isolation. Rather, we review to determine whether the charge, as a whole, fairly presented the case to the jury. *State* v. *Little*, 88 Conn. App. 708, 712–13, 870 A.2d 1170, cert. denied, 274 Conn. 916, 879 A.2d 895 (2005).

The defendant asserts that the court should not have mentioned the shoe in its answer. The jury had evidence, however, that the shoe was the source of the shoe print. Thus, the court properly mentioned the shoe as it was evidence "pertaining to the shoe print found at the Cumberland Farms." Although the court could have also instructed the jury, at the time it was reciting the evidence relating to the shoe print, that the parties disagreed on whether the shoe seized was in fact the source of the shoe print, the defendant makes no claim here that the court improperly excluded his evidence or sank his theory of defense out of view. Cf. *State* v. *Hernandez*, 218 Conn. 458, 590 A.2d 112 (1991). The court instructed the jurors that they were the sole finders of fact near the beginning of its charge and reminded them of this near the conclusion of the charge. When

answering the jury's question, the court did not discuss either the state's or the defendant's theory. Finally, after reciting the evidence related to the shoe print, all of which was provided by the state, the court highlighted the fact that the defendant had cross-examined the state's witnesses and offered to play back the recording of the cross-examination.

We conclude that the defendant has failed to demonstrate a violation of the third prong of *Golding* because he has failed to demonstrate that the jury charge was so biased in favor of the state's evidence as to deprive him of a fair trial.

### III

The defendant's third claim is that the court improperly denied his motion to suppress his sneakers from being introduced as evidence. We disagree.

As noted previously, the car in which the defendant was riding was stopped soon after crossing the state line into Massachusetts. The defendant and the other occupants of the car were subsequently arrested and brought to the police barracks. While the defendant was incarcerated, police officers from Connecticut visited the defendant and, while there, seized, among other things, his sneakers.

Before trial, the defendant filed a motion to suppress tangible evidence but did not specifically request that the sneakers be suppressed. During trial, defense counsel represented to the court that he had been notified the day before that the state intended to introduce evidence of the shoe prints found at the Cumberland Farms for the purpose of demonstrating that they were made by one of the defendant's sneakers. Defense counsel then asked permission to amend his motion to suppress orally to include the sneakers. The court heard argument. The court also heard testimony from Nault, the

officer who seized the sneakers. Nault testified: "[W]hen I went [to the Massachusetts police barracks] to seize evidence for clothing, if I didn't seize it, it would have been destroyed or been lost. So, I seized the clothing of all the people involved that were in that vehicle so we could use them possibly for later tests or for later examination." Defense counsel did not challenge Nault's testimony, either by way of cross-examination or other evidence, that had he not seized the clothing, the clothing would have been destroyed or lost. The court stated that it was temporarily denying the motion to suppress but indicated that it would further consider the matter. Two days later, while the defendant was conducting voir dire of the state's proffered expert on shoe prints, the court asked defense counsel: "Are you objecting, then, to the introduction of the evidence . . . ?" Defense counsel then argued that the sneakers should be suppressed and that the results of subsequent testing on the sneakers should also be suppressed. After hearing the defendant's argument, the court stated: "I indicated to you [earlier] that I did not see a problem at the seizure itself, and I have heard nothing to change my opinion as to that." The court then explained: "The facts that [Nault] has described [amount to] exigent circumstances, the seizure is . . . immediately following an arrest, he's afraid that the clothing will either be destroyed or disappear or that something will happen to it." After hearing additional argument regarding subsequent searches of the sneakers, the court denied the motion to suppress the sneakers but granted the motion to suppress evidence arising from any warrantless search of the sneakers. During the later discussions, the defendant, again, did not challenge Nault's testimony or the factual determination of the court regarding the destruction of the sneakers had they not been seized.

"Ordinarily, police may not conduct a search [or seize evidence] unless they first obtain a search warrant from

a neutral magistrate after establishing probable cause." (Internal quotation marks omitted.) *State* v. *Copeland*, 205 Conn. 201, 209, 530 A.2d 603 (1987). There are, however, a few exceptions to this rule, such as when there are exigent circumstances. *State* v. *Aviles*, 277 Conn. 281, 293, 891 A.2d 935, cert. denied, 549 U.S. 840, 127 S. Ct. 108, 166 L. Ed. 2d 69 (2006). "The term, exigent circumstances, does not lend itself to a precise definition but generally refers to those situations in which law enforcement agents will be unable or unlikely to effectuate an arrest, search or seizure, for which probable cause exists, unless they act swiftly, and without seeking prior judicial authorization." (Internal quotation marks omitted.) Id. "The trial court's finding of facts will stand unless they are clearly erroneous. Its legal conclusion regarding the applicability of the doctrine, however, is subject to de novo review." Id., 292.

The defendant asserts that there were no exigent circumstances in this case justifying the warrantless seizure. Specifically, he asserts that "the clothing was not in danger of being destroyed or removed elsewhere, and it was not available to the defendant." The defendant does not cite the portion of the record on which he relies for these assertions. Further, although the defendant asserts facts that are inconsistent with the facts found by the court, which included that the sneakers and other clothing would have been destroyed were they not seized, he has provided no analysis demonstrating that the court's factual determination was clearly erroneous. Finally, the defendant did not raise a challenge to the factual underpinning of the court's determination regarding exigent circumstances to the court.

On the basis of the court's factual determination that the sneakers were in danger of being lost or destroyed, which relied on testimony that was unchallenged during argument on the motion, we conclude that the court

did not improperly determine that the state had demonstrated that the warrantless seizure was valid pursuant to the exigent circumstances exception to the warrant requirement.

## IV

Finally, the defendant claims that there was insufficient evidence to support his conviction of attempt to commit larceny in the first degree and conspiracy to commit larceny in the first degree because the state failed to establish that he had attempted to take, or conspired to take, property in excess of $10,000.[7] We agree.

It is well settled that "due process requires the state to prove every element of the offense charged beyond a reasonable doubt." *State* v. *Coltherst*, 263 Conn. 478, 820 A.2d 1024 (2003), citing *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). In reviewing a sufficiency of the evidence claim, we first construe the evidence in a light most favorable to sustaining the decision; second, we consider whether on the facts so construed, and any inferences reasonably drawn from those facts, the trier of facts reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. See *State* v. *Miranda*, 260 Conn. 93, 110, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002). General Statutes § 53a-122 (a), which governs larceny in the first degree, provides in relevant part: "A person is guilty of larceny in the first degree when he commits larceny, as defined in section 53a-119, and . . . (2) the value of the property or service exceeds ten thousand dollars . . . ."

---

[7] The parties do not dispute the elements related to conspiracy or attempt but, rather, focus on the state's evidence regarding the value of the property. Therefore, we focus our analysis on the predicate substantive crime of larceny in the first degree.

At trial, the state introduced evidence that the automated teller machine at the Cumberland Farms contained, at the time of the burglary, $7500. It further introduced evidence that the bottom drawer of the safe contained $446. Finally, it elicited testimony from a Cumberland Farms' employee that the top drawer contained "a fair amount because we work second shift and we make quite a bit of money on second shift." There was no evidence produced, however, suggesting that a "fair amount" of money was a sum greater than $2054. There was no other evidence introduced regarding any other potential source of money relevant to the charges.

We do not agree with the state that the jury reasonably could have inferred that a "fair amount" of money in the top drawer was an amount in excess of $2054. Therefore, we agree with the defendant that there was insufficient evidence from which the jury could have concluded that he either conspired or attempted to commit larceny in the first degree.

We next turn to the appropriate remedy. The defendant argues that he should be acquitted of the two larceny charges. The state, on the other hand, argues that the evidence introduced at trial supported a conviction for conspiracy and attempt to commit larceny in the second degree in violation of General Statutes § 53a-123.[8] The state further contends that larceny in the second degree is a lesser offense included within larceny in the first degree, and, therefore, the proper course for this court is to remand the case to the trial court with direction to modify the judgment to reflect a conviction of conspiracy and attempt to commit larceny in the second degree and to resentence the defendant.

---

[8] General Statutes § 53a-123 (a) provides in relevant part: "A person is guilty of larceny in the second degree when he commits larceny, as defined in section 53a-119, and . . . (2) the value of the property or service exceeds five thousand dollars . . . ."

"State and federal appellate courts have long exercised the power to reverse a conviction while at the same time ordering the entry of judgment on a lesser-included offense. . . . The usual situation in which this occurs is when there is insufficient evidence to support one of the elements of an offense . . . [but] there is ample evidence to support a lesser-included charge which does not contain the insufficiently proven element." (Citations omitted; internal quotation marks omitted.) *State* v. *Edwards*, 201 Conn. 125, 134 n.6, 513 A.2d 669 (1986).

Thus, to determine whether modification is appropriate, we must determine whether larceny in the second degree is a lesser included offense, under these circumstances for the purpose of modifying the judgment, and whether the jury necessarily found all the elements of the proposed lesser included offense when it delivered its verdict considering the greater offense. For this determination, we engage in a plenary review. See *State* v. *Greene*, 274 Conn. 134, 155, 874 A.2d 750 (2005), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d 988 (2006). We begin by comparing the elements of the crime charged with the elements of the proposed lesser included offense.[9] General Statutes § 53a-119, which defines larceny, provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ." Section 53a-122 (a), which governs larceny in the first degree, provides in relevant part: "A person is guilty of larceny in the first degree when he commits larceny, as defined in section 53a-119, and . . . (2) the value of the property . . . exceeds ten thousand dollars . . . ." Section 53a-123 (a), which governs larceny in the second degree, provides in relevant part: "A person

---

[9] See footnote 7 of this opinion.

is guilty of larceny in the second degree when he commits larceny, as defined in section 53a-119, and . . . (2) the value of the property or service exceeds five thousand dollars . . . ."

Thus, to prove conspiracy and attempt to commit larceny in the first degree, pursuant to the charges in this case, the state had to demonstrate that (1) the defendant had the intent to deprive another of property and (2) he wrongfully conspired and attempted to take more than $10,000.[10] To prove conspiracy and attempt to commit larceny in the second degree, the state would have had to show that (1) the defendant had the intent to deprive another of property and (2) he wrongfully conspired and attempted to take more than $5000.[11]

Because we have determined that the evidence was insufficient to support the finding that the value of the property the defendant conspired and attempted to take exceeded $10,000, that finding, as to value, drops out, and the only relevant jury finding to remain is that the defendant intended to take property of another. Larceny in the second degree, however, has the element that the property must have a value of more than $5000.

The state argues, nevertheless, that, for the purposes of modification, conspiracy and attempt to commit second degree larceny are lesser offenses included within conspiracy and attempt to commit larceny in the first degree because, in order to find that the property at stake had a value exceeding $10,000, the jury must also have found the value of the property at stake had a value exceeding $5000. Although at first blush there

---

[10] Because only the element relating to the value of the property at stake is at issue here, for clarity we have somewhat simplified the other elements necessary to prove larceny. Cf. *State* v. *Spillane*, 54 Conn. App. 201, 217–18, 737 A.2d 479 (1999) (listing elements of larceny), rev'd on other grounds, 255 Conn. 746, 770 A.2d 898 (2001).

[11] See footnote 10 of this opinion.

appears to be some merit to this argument, we are unpersuaded.

In the cases relied on by the state, and other cases of which we are aware, in which modification was appropriate, the element, which the reviewing court found the evidence insufficient to support, was distinct from the other elements of the charged crime. When that element was eliminated, the remaining elements were themselves adequate to support a conviction of a lesser included offense. Thus, our Supreme Court determined that a judgment could be modified from a conviction of manslaughter with a firearm to a conviction of manslaughter. *State* v. *Greene*, supra, 274 Conn. 160–62. In *Greene*, to find the defendant guilty of either crime, the jury would have had to find all the elements of manslaughter, but to find him guilty of the charge of manslaughter with a firearm, the jury had to find an additional element, namely, that he used a firearm. Id., 161. Elimination of the firearm element did not affect the jury's finding as to the other elements that constituted manslaughter. See id.; see also *State* v. *Edwards*, supra, 201 Conn. 133 n.6; *State* v. *Wade*, 106 Conn. App. 467, 469, 942 A.2d 1085, cert. granted on other grounds, 287 Conn. 908, 950 A.2d 1286 (2008); *State* v. *Falcon*, 26 Conn. App. 259, 600 A.2d 1364 (1991) (collecting cases), cert. denied, 221 Conn. 911, 602 A.2d 10 (1992); cf. *State* v. *Clemons*, 31 Conn. App. 614, 626 A.2d 1310, cert. denied, 227 Conn. 908, 632 A.2d 696 (1993).

Here, the jury made one finding as to the value of the money involved with the charge. Once the jury's finding on this element is eliminated, there is no longer a finding by the jury as to the value of the money or whether there was any money at all. Thus, unlike the cases relied on by the state, this is not a situation in which a distinct element is found insufficiently supported by the evidence, but the remaining elements,

which were found by the jury, are unaffected and constitute a separate, lesser included offense.[12]

Although it is true that there was evidence from which the jury might have concluded that the value of the property exceeded $5000, we do not know what evidence the jury accepted and what it rejected or how it reached the conclusion it did reach. We are not at liberty to make that finding. It is not enough that the jury was presented evidence from which it might have found that the defendant was guilty of conspiracy and attempt to commit larceny in the second disagree. See *State* v. *Clemons,* supra, 31 Conn. App. 614.

The judgment in the second case is reversed only as to the conviction of conspiracy to commit larceny in the first degree and attempt to commit larceny in the first degree and the case is remanded with direction to render judgment of not guilty on those counts. The judgments are affirmed in all other respects.

In this opinion the other judges concurred.

---

[12] We also note that the court did not instruct the jury on lesser included offenses, and neither party requested that it do so.