******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MICHAEL LABARGE
(AC 37581)

DiPentima, C. J., and Prescott and Bishop, Js.

*Argued January 11—officially released April 5, 2016*

(Appeal from Superior Court, judicial district of New Britain, D'Addabbo, J.)

*William B. Westcott*, assigned counsel, for the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, was *Brian Preleski*, state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Michael Labarge, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a and tampering with physical evidence in violation of General Statutes § 53a-155 (a) (1). On appeal, the defendant claims that the trial court improperly (1) denied his motion to sever for trial the two charges against him and (2) denied his motion to suppress certain statements that he had made to state correction officers. We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. In the evening of August 29, 2009, the defendant came across the victim, Cornell Johnson, selling crack cocaine to the defendant's girlfriend, Sherri Clarke. The defendant then beat the victim with a baseball bat and stabbed him nineteen times with a knife, killing him. The defendant then cut off the victim's penis and left the murder scene with Clarke, taking the victim's penis, identification, money, and drugs with him. The couple went to their apartment in New Britain where the defendant flushed the victim's penis down the toilet. The couple also showered, changed clothing, and smoked crack.

In the early morning of August 30, 2009, the defendant and Clarke returned to the murder scene and set fire to the victim's car. Later that morning, the couple purchased two hand saws from The Home Depot and again returned to the murder scene. There, they used the hand saws to cut the victim's body into fifteen pieces and they then hid the victim's remains in the nearby woods.

The defendant subsequently was arrested in connection with the murder and dismemberment of the victim. The state charged the defendant in a two count, single long form information with murder in violation of § 53a-54a in count one and tampering with physical evidence in violation of § 53a-155 (a) (1) in count two. Following a jury trial, the defendant was convicted on both counts,[1] and the court, *D'Addabbo, J.*, sentenced the defendant to a total effective sentence of sixty-five years incarceration. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court abused its discretion by denying his motion to sever the murder count from the tampering count. His claim is twofold. The defendant first relies on *State* v. *Boscarino*, 204 Conn. 714, 723, 529 A.2d 1260 (1987),[2] to argue that the denial of his motion to sever prejudiced his right to a fair trial because the jury, after hearing the facts underlying the tampering charge, which he argues were particularly brutal, violent, and shocking, could not fairly consider his guilt as to the murder charge. In

addition, the defendant argues that the court's denial of his motion to sever compromised his fifth amendment right to testify in connection with the murder charge but to remain silent with respect to the tampering charge.

The following additional procedural facts are relevant to the resolution of the defendant's severance claims. On May 10, 2012, the state filed a substitute long form information charging the defendant in count one with murder in violation of § 53a-54a and in count two with tampering with physical evidence in violation of § 53a-155 (a) (1). The factual underpinning of the tampering charge related to the state's claim that, on the day after the murder, the defendant, with the help of his girlfriend, cut up and concealed the victim's body by placing it in various locations in the woods. In response, on May 15, 2012, the defendant filed a motion to sever the murder charge from the tampering charge.

At the May 24, 2012 hearing on the severance motion, the defendant made a twofold claim. First, he argued that being required to defend the murder and tampering charges in the same trial would substantially prejudice him because the facts underlying the tampering charge were too brutal, violent, and shocking to allow the jury to consider fairly and independently his guilt as to the murder charge.[3] Second, he claimed that he wished to testify in response to the murder charge but not in regard to the tampering charge, and that being required to defend both charges in the same trial prejudiced his right, alternately to present a defense to the murder charge while preserving his right to remain silent as to the tampering charge. As to this second aspect of his claim regarding severance, the defendant stated that he had "substantial evidence to offer to the fact finder related to the cause of death of [the victim]. If [his] testimony is believed his conduct could be justified." In addition, he stated that "[i]n contrast . . . there [was] no advantage to him or incentive to him to testify on the tampering case."

The state responded that severance was unwarranted where the charges arise from the same criminal act or transaction and the offenses are of the same character. Specifically, the state argued that the burden rested on the defendant to prove that he would be substantially prejudiced by failing to sever the charges for trial and that the defendant had not only failed to meet this burden, but had overlooked it entirely because the evidence regarding each charge would, in fact, be admissible regarding the other charge. Thus, the state claimed, because the evidence would, in any event, be cross admissible, the defendant could not prove any prejudice by the joinder of the charges. In making this assertion, the state noted that the defendant had acknowledged that the evidence underlying the two charges would be cross admissible if the charges were tried separately.[4]

On May 30, 2012, the court denied the defendant's motion in an oral ruling. The court noted that the burden was on the defendant to prove that the charges should be tried separately by establishing that the charges were not of the same character and that the defendant had not met this burden. As to the defendant's first claim, the court found that the "defendant [had] offered no evidence or argument to support the proposition that the offenses are not of the same character." Further, the court stated that "the evidence appears to be cross admissible with respect to each count. Evidence that a murder was committed appears to be admissible in the count . . . alleging dismemberment and evidence that the body was dismembered appears to be admissible in the count alleging murder, particularly the expected testimony of the medical examiner."[5]

With respect to the defendant's second claim, the court concluded that the defendant had not met his burden to prove that trying the cases together compromised his right to testify in the murder charge and to refrain from testifying in the tampering charge. The court explained that it could grant the defendant's motion on that ground only if the defendant made a "convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing it is essential that the defendant present enough information regarding the nature of the testimony which [he] is to give on one count, and his reasons for not wishing to testify on the other . . . ." The court then considered the defendant's proffer and concluded that the defendant had not met his burden. The court noted that the defendant merely had stated that he had "substantial information to present on [the murder] count including information relevant to the defense of justification; [but] other than this presentation, there is no further information concerning the testimony as to the murder count." Additionally, the court stated that the "defendant ha[d] indicated that he wishes to exercise his fifth amendment right on the tampering with evidence count" and that "the defendant offer[ed] no information to support his position of having a, quote, unquote, strong need to refrain from testifying." As a result, the court denied the defendant's motion for severance. During the court's final instructions to the jury, it informed the jury that the defendant had been charged in two counts and that it was the jury's duty to determine the guilt or nonguilt of the defendant as to each count separately.[6]

Before we address the defendant's claims, we set forth the standard under which we review a trial court's denial of a defendant's motion to sever for trial charges already joined in a single information. Practice Book § 41-18 provides: "If it appears that a defendant is prejudiced by a joinder of offenses, the judicial authority

may, upon its own motion or the motion of the defendant, order separate trials of the counts or provide whatever other relief justice may require." The decision to sever cases for trial "is within the sound discretion of the trial court and that discretion must not be disturbed unless it has been manifestly abused. . . . The discretion of a court to order separate trials should be exercised only when a joint trial will be substantially prejudicial to the rights of the defendant, and this means something more than that a joint trial will be less than advantageous to the defendant. " (Citation omitted; internal quotation marks omitted.) *State* v. *Rodgers*, 198 Conn. 53, 63, 502 A.2d 360 (1985). On appeal, it is always the defendant's burden "to show that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions." (Internal quotation marks omitted.) *State* v. *Boscarino*, supra, 204 Conn. 721; see *State* v. *Payne*, supra, 303 Conn. 544 ("[t]he defendant bears a heavy burden of showing that [joinder] resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions" [internal quotation marks omitted]).

A

We first address the defendant's contention that the trial court improperly denied his motion to sever on the grounds that the factual circumstances underlying the tampering charge were so brutal, violent, and shocking that they tended to arouse the passions of the jury and render it unable to consider fairly and independently the evidence against him in the murder charge. See *State* v. *Boscarino*, supra, 204 Conn. 723 ("acknowledg[ing] that evidence of a defendant's brutal or shocking conduct in one case may compromise the jury's ability to consider fairly the charges against him in other unrelated, but jointly tried cases"). In response to this claim, the state asserts that the court correctly denied the defendant's motion to sever because the defendant did not make the threshold showing that the evidence with respect to both charges was not cross admissible. In short, the state argues that the court need only consider the *Boscarino* factors if the court first makes a determination that the evidence would not be cross admissible. Here, the state notes that the defendant has acknowledged cross admissibility and that admission, supported independently by facts in the record, should conclude this court's consideration of the propriety of the trial court's ruling on the motion to sever. We agree.

"In the trial court, when multiple charges have already been joined in a single information by the state pursuant to [General Statutes] § 54-57, and the defendant has filed a motion to sever the charges for trial pursuant to Practice Book § 41-18, the defendant bears the burden of proving that the offenses are not of the 'same character'; General Statutes § 54-57; and there-

fore that the charges should be tried separately." *State* v. *Payne*, supra, 303 Conn. 549. To meet this burden, the defendant must prove that the evidence of the separate charges would not be cross admissible if the cases were tried separately. See *State* v. *Fana*, 109 Conn. App. 797, 804–805, 953 A.2d 898, cert. denied, 289 Conn. 936, 958 A.2d 1246 (2008). This is because "[when] evidence of one incident would be admissible at the trial of the other incident, separate trials would provide the defendant no significant benefit. . . . Under such circumstances, the defendant would not ordinarily be substantially prejudiced by joinder of the offenses for a single trial. . . . Accordingly, we have found joinder to be proper [when] the evidence of other crimes or uncharged misconduct [was] cross admissible at separate trials." (Internal quotation marks omitted.) *State* v. *Anderson*, 318 Conn. 680, 692, 122 A.3d 254 (2015); see also *State* v. *Crenshaw*, 313 Conn. 69, 84, 95 A.3d 1113 (2014) ("[w]e consistently have found joinder to be proper if we have concluded that the evidence of other crimes or uncharged misconduct would have been cross admissible at separate trials" [internal quotation marks omitted]); *State* v. *Schroff*, 198 Conn. 405, 409, 503 A.2d 167 (1986) (concluding that "[e]conomy and expedition of judicial resources are not achieved when the same facts must be proved to two different juries," such as when one charge directly resulted from other charge).

Once the defendant makes a threshold showing that the evidence underlying the charges is not cross admissible, on appeal the defendant then must prove that the balance of the *Boscarino* factors weighs in favor of severance, meaning that the denial of severance resulted in substantial prejudice to the defendant that the court's curative instructions could not remedy. *State* v. *LaFleur*, 307 Conn. 115, 159, 51 A.3d 1048 (2012). In other words, the *Boscarino* factors are assessed only if the evidence underlying the charges is not cross admissible. Id. ("[w]here evidence is cross admissible, . . . our inquiry ends"); see also *State* v. *Fana*, supra, 109 Conn. App. 804 ("[a]t least with regard to the first *Boscarino* factor, a defendant will not be able to demonstrate prejudice by a consolidation of charges if the evidence presented would have been cross admissible at the two trials, were the charges tried separately").[7] If the defendant fails to make either showing, the motion to sever must be denied as the defendant has not carried his burden.

In the present case, the defendant did not challenge before the trial court the cross admissibility of the evidence if the charges were tried separately and makes no attempt to do so before this court. Instead, he relies solely on the second *Boscarino* factor to argue that the court abused its discretion by denying his motion to sever. This argument is not available to the defendant because of the cross admissibility of the evidence. *State* v. *LaFleur*, supra, 307 Conn. 155. Therefore, on review,

we need not discuss the comparative brutality of his crimes or any of the *Boscarino* factors.

Our review of the record reveals that the defendant's acknowledgement at trial that the evidence would be cross admissible was well supported. Accordingly, even without the defendant's concession of cross admissibility, it is likely that the court, on the basis of a proffer from the state, reasonably would have been entitled to come to the same conclusion. As the court explained in its oral ruling denying the defendant's motion for severance, "the evidence appears to be cross admissible with respect to each count. Evidence that a murder was committed appears to be admissible in the count . . . alleging dismemberment and evidence that the body was dismembered appears to be admissible in the count alleging murder, particularly the expected testimony of the medical examiner." See *State* v. *Moye*, 119 Conn. App. 143, 150, 986 A.2d 1134 ("A trial court may admit [e]vidence that an accused has taken some kind of evasive action to avoid detection for a crime, such as . . . concealment of evidence . . . [which] is ordinarily the basis for a charge on the inference of consciousness of guilt. . . . In seeking to introduce evidence of a defendant's consciousness of guilt, [i]t is relevant to show the conduct of an accused . . . which may be inferred to have been influenced by the criminal act." [Internal quotation marks omitted.]), cert. denied, 297 Conn. 907, 995 A.2d 638 (2010). Therefore, because the defendant has failed to show that the court's denial of his motion to sever caused him prejudice and that the cases were not cross admissible, this aspect of his severance claim fails.

B

The defendant next claims that the court's denial of his motion to sever violated his fifth amendment right to remain silent with respect to the tampering charge and to testify with respect to the murder charge. In response, the state argues that the court did not abuse its discretion in denying the defendant's motion to sever on this basis because the defendant did not sustain his burden of demonstrating to the trial court that a joint trial on both charges would impair his fifth amendment right. We agree with the state.

In *State* v. *Schroff*, supra, 198 Conn. 409, our Supreme Court decided that "no need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." (Internal quotation marks omitted.) "In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on [some counts] and his reasons for not wishing to testify on [others]—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of

economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying." (Internal quotation marks omitted.) *State* v. *Marsala*, 43 Conn. App. 527, 535–36, 684 A.2d 1199 (1996), cert. denied, 239 Conn. 957, 688 A.2d 329 (1997).

From the record, we conclude that the defendant failed to sustain his burden of showing that the denial of his motion to sever resulted in substantial prejudice to his fifth amendment rights. Specifically, the defendant provided the court with no information, let alone enough information, for a convincing showing that he had a genuine need to testify on the murder charge and a strong need to refrain from testifying on the tampering charge. The only information that the court had before it from which to assess the nature and substance of the defendant's proposed testimony was defense counsel's statement that "[the defendant] intends to testify as to the murder charge. He will testify, he will offer substantial evidence before the fact finder." In its oral ruling denying the defendant's motion to sever, the court noted that "other than this presentation, [the defendant offered] no further information concerning [his proposed] testimony as to the murder count." The defendant's showing regarding his reason to refrain from testifying on the tampering count was likewise nondescript. He merely informed the court, in conclusory fashion, that he did not plan to testify as to the tampering charge if the charges were tried separately. At no point did the defendant present any information as to why he did not plan to testify regarding the tampering charge and never identified a "strong need to refrain from testifyng on the [tampering charge]." (Internal quotation marks omitted.) *State* v. *Schroff*, supra, 198 Conn. 409.

The defendant's general assertions, unsupported by any specific proffer, were insufficient to meet his heavy burden of demonstrating that the denial of his motion to sever would substantially prejudice his right to remain silent as to one charge and to testify as to the other. See id. Therefore, "[t]he defendant's complete failure to substantiate his claim of prejudice falls far short of the 'convincing showing' required by our cases." Id., 410. In sum, the court's denial of the defendant's motion to sever was not an abuse of discretion.

## II

The defendant next claims that the trial court improperly denied his motion to suppress certain incriminating statements that he had made to correction officers at the MacDougal-Walker Correctional Institution (Walker facility), which he contends were the product of custodial interrogation and made without the benefit of having been accorded his *Miranda* rights. See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The defendant also claims that his

statements were obtained in violation of his sixth amendment right to counsel. See *Massiah* v. *United States*, 377 U.S. 201, 205–206, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964). To prevail on his claims, the defendant must prove that state law enforcement officials purposefully elicited incriminating statements from him while he was in their custody and subject to custodial interrogation. *Miranda* v. *Arizona,* supra, 444. The state responds that these claims must fail because the record demonstrates that the defendant was never subject to custodial interrogation. We agree with the state.

The following additional procedural history and facts, as found by the trial court, are relevant to our disposition of the defendant's suppression claims. The defendant was charged and arraigned on September 9, 2009, in the Bristol Superior Court, at which time a public defender was appointed for his representation and a surety bond was set at five million dollars. On September 17, 2009, the case was transferred to the New Britain judicial district and a New Britain public defender entered an appearance on behalf of the defendant in lieu of his prior counsel. On May 16, 2012, the defendant filed a motion to suppress certain statements made to correction officers at the Walker facility. The court held an evidentiary hearing on the defendant's motion on May 24 and 25, 2012. On June 20, 2012, the parties filed memoranda of law and the court heard argument regarding the motion. On August 28, 2012, the court filed a memorandum of decision denying the defendant's motion to suppress.

In its memorandum of decision, the court set forth the following as part of its factual findings: "On September 25, 2009, the defendant was returning by marshal transportation to the [Walker facility] after a G.A. 7 Meriden Superior Court appearance. Upon his return, the defendant, as with all prisoners returning from court appearances, was brought to the admitting and processing unit. Correctional Officer Kevin Cashman testified that when the defendant returned from his court appearance, he and other inmates entered the admitting and processing unit 'gang' chained. These inmates, including the defendant, were placed in a 'gang cell' for identification purposes. At this location, the restraints were removed from the defendant, and he and other inmates proceeded to a smaller, separate cell area where a strip search was conducted. The defendant was not shackled, but under supervision. Following that strip search, the inmates received a meal and were directed to another holding cell, which was specific to the inmate's particular correctional center or housing area. This 'destination' holding cell is approximately twenty feet by fifty feet and is capable of holding up to forty-eight inmates. [Cashman] testified that on September 25, 2009, the defendant, upon his return from his court appearance, was processed at the Walker [facility] admitting and processing unit in this fashion.

"[Correctional] Officer [Serge] Duquette testified that while assigned to the admitting and processing unit at the Walker facility on September 25, 2009, he recognized the defendant as someone from his hometown of New Britain as he was taking him from the large holding area to the strip search area. [Duquette] called the defendant by his street name, 'Percocet.' Duquette testified that he also recognized the defendant's girlfriend from growing up in New Britain.

"When the defendant was in the destination holding cell, [Duquette] and the defendant had a conversation. Duquette testified that during this conversation, the defendant made incriminating statements to him about a criminal act.

"The defendant's 'destination' holding cell was approximately ten feet from the office of [Cashman]. While in his office, [Cashman] heard a 'part of the conversation' between [Duquette] and the defendant. [Cashman] knew the defendant as an inmate, and was aware that the defendant was familiar with Cashman as a correctional officer. [Cashman] testified that as part of that conversation, he heard the defendant use the 'N' word.[8] This immediately caused safety concerns for Cashman, causing him to instruct [Duquette] to remove the defendant from the holding area and bring him to [Cashman's] office, while the defendant was waiting to be transported to his housing unit in the Walker facility.

"While in Cashman's office, the defendant, unshackled, continued his conversation with [Duquette], making what are described as incriminating statements. The testimony indicated that [Cashman] made no inquiry of the defendant while he was in his office. The defendant remained in [Cashman's] office for approximately five minutes and then was transported by [Cashman] to the defendant's housing unit. There was no evidence presented that [Cashman] or [Duquette] provided the defendant with 'Miranda warnings.' " (Footnote in original.)

Before addressing the defendant's claims, we set forth the applicable standard of review and controlling legal principles that guide our assessment. "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda* v. *Arizona*, supra, 384 U.S. 444. These procedural safeguards are generally referred to as *Miranda* warnings. See id., 444–45. A defendant is entitled to *Miranda* warnings only if he can prove that he was subject to custodial interrogation; *State* v. *Pinder*, 250 Conn. 385, 409, 736 A.2d 857 (1999); which requires the defendant to prove that two threshold conditions are satisfied: "(1) the defendant must

have been in custody; and (2) the defendant must have been subjected to police interrogation." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 302 Conn. 287, 294, 25 A.3d 648 (2011).

A person is in custody for *Miranda* purposes "only if, in view of all the surrounding circumstances, a reasonable person would have believed that he was not free to leave." (Internal quotation marks omitted.) *State* v. *Kirby*, 280 Conn. 361, 393, 908 A.2d 506 (2006). "Two discrete inquiries are essential to determine custody: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." (Internal quotation marks omitted.) *State* v. *Turner*, 267 Conn. 414, 434–35, 838 A.2d 947, cert. denied, 543 U.S. 809, 125 S. Ct. 36, 160 L. Ed. 2d 12 (2004).

A defendant in custody is subject to interrogation not only in the face of express questioning by police, but also when subjected to "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island* v. *Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). "Whether a defendant in custody is subject to interrogation necessarily involves determining first, the factual circumstances of the police conduct in question, and second, whether such conduct is normally attendant to arrest and custody or whether the police should know that such conduct is reasonably likely to elicit an incriminating response. . . . A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Canady*, 297 Conn. 322, 335–36, 998 A.2d 1135 (2010).

"As a general matter, the standard of review for a motion to suppress is well settled. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]hen [however] a question of fact is essential to the outcome of a particular legal determination that implicates a defendant's constitutional rights, and the credibility of witnesses is not the primary issue, our customary deference to the trial court's factual findings is tempered by a scrupulous examination of the record to ascertain that the trial court's factual findings are supported by substantial evidence. . . . [When] the legal conclusions of the court are challenged, [our

review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set [forth] in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Gonzalez*, supra, 302 Conn. 295–96.

In the present case, the defendant does not challenge the court's factual findings. Instead, the defendant challenges only the court's legal conclusions on the basis of those findings. We conclude that the record supports the conclusion that defendant was not interrogated as that term is understood in *Miranda*, and, therefore, we need not reach the question of whether he was held in custody. In reaching this conclusion, we find *State* v. *Vitale*, 197 Conn. 396, 497 A.2d 956 (1985), to be instructive. In *Vitale*, an incarcerated defendant made unprompted inculpatory statements to a uniformed correction officer who, having attended high school with that defendant, had started a conversation with him about " 'high school and playing football and things.' " Id., 410. Despite the fact that the conversation in *Vitale* had turned to "why that defendant had been arrested"; id.; before the defendant made the inculpatory statements, our Supreme Court concluded that that defendant's statements were not made in response to interrogation. Id., 412. Rather, the court determined that the defendant's inculpatory statements "were volunteered by the defendant during a general conversation between him and [the correction officer], wherein the defendant spoke freely about the offenses with which he was charged." Id.

The facts we confront in the present case are akin to those found in *Vitale*. Here, the record demonstrates that the defendant freely volunteered the statements during a neutral conversation with Duquette, who initiated the conversation in order to relieve the tension of a stressful and invasive intake process. Duquette testified that he recognized the defendant from growing up in the same town, called the defendant by his street name, asked the defendant whether he was in court for what had occurred in New Britain, and told the defendant that he recognized his girlfriend from growing up in New Britain for the purpose of making an uncomfortable situation more cordial. In our view, those questions fairly can be construed as no more than small talk initiated by a correction officer for the purpose of defusing a stressful and invasive intake process and not for the purpose of soliciting incriminating information from the defendant. See id., 412; see also *Rhode Island* v. *Innis*, supra, 446 U.S. 300 (" '[i]nterrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself"). The record reveals that, indeed, the only question that plausibly could have been seen as focused on the defendant's potential criminal liability concerned whether the defendant had been in court in connection with the New Britain murder. The

answer to that question, at its most harmfulness to the defendant, could have elicited an answer that yes, indeed, that was the reason for his presence in court on that date. That answer, however, would not have been inculpatory. The defendant's affirmation of the reason for his presence at court would have added nothing to the state's case; it would have contributed nothing to satisfy the state's burden of proving the defendant's guilt. The defendant's frank answer to Duquette's question about his presence in court could provide no proof of the defendant's guilt. As such, the question was not reasonably likely to elicit an incriminating response from the defendant.

In addition, the record does not disclose that Cashman, through direct questioning or other conduct, subjected the defendant to any questioning that elicited an incriminating response.[9] As with Duquette, Cashman did not elicit from the defendant any of his unforeseeably volunteered statements regarding his culpability. *State* v. *Canady*, supra, 297 Conn. 335–36 (law enforcement cannot be held accountable for unforeseeable results of their questions or conduct). On the basis of the court's findings, which are supported by the record, we conclude that the trial court properly determined that the defendant had not been subject to interrogation for the purposes of *Miranda* when he made the statements at the Walker facility. Having concluded that the defendant was not subject to an interrogation as contemplated in *Miranda*, we need not consider whether, in addition, he was in custody for *Miranda* purposes at the time of the conversations in question.

Similarly, our conclusion that the defendant was not subject to interrogation belies his sixth amendment claim that statements that were "deliberately elicited from him after he had been indicted and in the absence of his counsel"; *Massiah* v. *United States*, supra, 377 U.S. 206; were used against him at trial. "Because the right to counsel applies only when the government deliberately elicits incriminating information, the defendant's sixth amendment right to counsel was not violated. *United States* v. *Henry*, 447 U.S. 264, 270, 100 S. Ct. 2183, 2186, 65 L. Ed. 2d 115 (1980); *Massiah* v. *United States*, [supra, 206]." *State* v. *Vitale*, supra, 197 Conn. 412. Accordingly, we conclude that the court properly denied the defendant's motion to suppress the statements.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] At trial, the defendant testified on his own behalf. He did not dispute killing the victim, cutting off the victim's penis and flushing it down the toilet, burning the victim's car, purchasing the hand saws and using them to dismember the victim's body, and hiding the body parts in the woods. Instead, he testified that he happened to pass by the murder scene, where the victim was selling crack cocaine to Clarke, and, believing that the victim was sexually assaulting Clarke, went berserk and "blacked out." The court instructed the jury on the defense of others; see General Statutes § 53a-19; and extreme emotional disturbance affirmative defenses along with the

lesser included offenses of intentional manslaughter in the first degree, reckless indifference manslaughter in the first degree, and manslaughter in the second degree.

[2] "In *State* v. *Boscarino*, supra, 204 Conn. 723, [our Supreme Court] applied three factors to determine whether joinder was proper: (1) whether the factual similarities . . . [although] insufficient to make the evidence in each case substantively admissible at the trial of the others, were significant enough to impair the defendant's right to the jury's fair and independent consideration of the evidence in each case; (2) whether [t]he prejudicial impact of joinder in these cases was exacerbated by the violent nature of the crimes with which the defendant was charged . . . [giving] the state the opportunity to present the jury with the intimate details of each of these offenses, an opportunity that would have been unavailable if the cases had been tried separately; and (3) whether [t]he duration and complexity of the trial also enhanced the likelihood that the jury would weigh the evidence against the defendant cumulatively, rather than independently in each case." (Internal quotation marks omitted.) *State* v. *Payne*, 303 Conn. 538, 543 n.2, 34 A.3d 370 (2012).

[3] Specifically, the defendant's counsel stated: "Your Honor, having read the long form information I think there will be evidence offered from the state that the victim suffered twenty-two stab wounds and there [were] two areas of blunt force trauma to the victim which could have caused his death. That would be I anticipate what the medical examiner's testimony will be. That's [the murder charge]. Okay. Ordinarily . . . I would say that's a strong showing of violent, brutal and shocking conduct. Okay. But arguably [the tampering charge] is even more shocking because [the tampering charge] alleges severance of . . . the victim into fifteen separate pieces . . . . [So] I think clearly under any notion of what is brutal, violent or shocking [the tampering charge] . . . meets that definition."

[4] During the hearing, the court asked the defendant, "what if evidence of the [tampering] count comes in even if the case is severed," to which defense counsel responded, "clearly I anticipate that regardless of the court's ruling that . . . the facts surrounding the tampering are going to be part of the [murder charge's] factual basis to the fact finder."

[5] The court also considered, and rejected, the defendant's *Boscarino* claim, stating that the court "cannot say that one act is necessarily more brutal or shocking than any other. In [any] event based on the arguments of the parties it appears that evidence of both acts would be admissible in both counts whether they were severed or not."

[6] The court instructed: "Each count alleges a separate crime. It will be your duty to consider each count separately and decide the guilt or nonguilt of the defendant. This means that the determination on one count or charge does not automatically make the defendant guilty or not guilty on any other count or charge."

[7] It is important to note that this case concerns the denial of a defendant's motion for severance rather than a court's consideration of a motion for joinder filed by the state. In *Payne*, our Supreme Court rejected the blanket rule in favor of joinder, and, instead, adopted a test for determining which party has the burden to join or sever charges for trial based on the form of the charging document. *State* v. *Payne*, supra, 303 Conn. 548–50. As previously stated, if the charges are joined in a single information, the defendant bears the burden of proving that the charges should be tried separately. Id., 549. In contrast, "when charges are set forth in separate informations . . . and the state has moved in the trial court to join the multiple informations for trial, the state bears the burden of proving that the defendant will not be substantially prejudiced by joinder pursuant to Practice Book § 41-19. The state may satisfy this burden by proving, by a preponderance of the evidence, either that the evidence in the cases is cross admissible or that the defendant will not be unfairly prejudiced pursuant to the *Boscarino* factors." (Footnote omitted.) Id., 549–50.

[8] The descriptor "N" word signifies a racially offensive and inflammatory term.

[9] The defendant argues that Cashman subjected the defendant to *Miranda* interrogation by remarking "Really?" after the defendant had finished his statements. This argument is unavailing, however, because the defendant voluntarily made all of the statements he then sought to suppress prior to Cashman's remark. Therefore, assuming, arguendo, that the remark would constitute interrogation—a doubtful assumption under the circumstances— the remark prompted no statement that the state sought to use against the defendant in violation of his fifth amendment rights.